FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **TERESA L. PENNINGTON** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No: 1:10cv112 (TSE/JFA) |
| ) | |
| ) | |
| **MIDLAND CREDIT MANAGEMENT, INC.** ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Teresa L. Pennington, by and through counsel, brings this Complaint against Defendant Midland Credit Management, Inc. ("Defendant" or "MCM") on the grounds and in the amounts set forth herein:

### Preliminary Statement

Teresa Pennington is a Virginia State Trooper who was victimized by identity theft and spent years trying to clear her good name and credit record. The thief opened a number of accounts using Ms. Pennington's social security number and name and was ultimately prosecuted and sentenced for those crimes. However, the account in issue here that the defendant MCM was attempting to collect was not one of those accounts, but rather an account that the thief opened in her own name before she obtained access to the plaintiff's information. MCM was unable to collect anything from the real debtor and instead decided to pursue Ms. Pennington. Ms. Pennington promptly advised the defendant that she was not the proper party and that they should contact the thief. Instead of investigating the matter and discovering who really opened the account in issue, MCM proceeded to harass Ms. Pennington and in the process violate the FDCPA and FCRA. The Plaintiff brings this action for damages based upon Defendant's violations of the Fair

Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq.* (hereinafter referred to as the "FDCPA") and Fair Credit Reporting Act, 15 U.S.C. §1681b(f) ("FCRA"). Plaintiff seeks actual damages, punitive damages, costs and attorneys' fees as part of this action.

## Parties

1. Plaintiff Teresa L. Pennington is a natural person and is a resident and citizen of the Commonwealth of Virginia. Ms. Pennington is a "consumer" as defined by the FDCPA at 15 U.S.C. §1692a(3) and the matter at issue involves a "debt" as defined by 15 U.S.C. §1692a(5). Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Teresa L. Pennington.

2. Defendant MCM is a Kansas corporation with its principal place of business in California. The Defendant is a debt collector as defined by 15 U.S.C. §1692a(6) as the principal purpose of Defendant's business is to purchase and collect debts using the mail and telephone. MCM is also a person and user of credit information as defined by the FCRA.

## Jurisdiction & Venue

3. This court has jurisdiction pursuant to the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et. seq.* and the Fair Credit Reporting Act 15 U.S.C. 1681 *et. seq.* and 28 U.S.C. §1337. Venue is proper in this jurisdiction and division as the Defendant is subject to personal jurisdiction in the Eastern District of Virginia, Alexandria division, by virtue of the business that it conducted within the division. Because the Defendant is subject to personal jurisdiction in the district and division, venue is proper in this Court. As stated in the facts herein, Defendant MCM caused tortious injury in the Commonwealth by an act or omission through an act that occurred outside the Commonwealth *i.e.* its failure to follow the requirements of the FDCPA and

FRCRA in connection with the collection of an account that Plaintiff did not owe. Based upon its nationwide collection practice, MCM regularly engages in the collection of debts and reporting of credit information involving citizens of the Commonwealth of Virginia.

### Factual Allegations

4. Ms. Pennington was the victim of identity theft in 2005 perpetrated by a Teresa L. Chavez who also went by the name Teresa Pennington. As a result of the theft of her personal information, derogatory credit items began appearing on Ms. Pennington's credit report and it took years to finally remove them. In addition to the actual fraudulent accounts opened using the plaintiff's social security number, debt collection companies also attempted to collect the identity thief's actual bad credit from Ms. Pennington.

5. Defendant MCM is a collection company that attempted to collect the identity thief's debt from Ms. Pennington. Based upon information and belief, the identity thief opened her own account with Dell Financial Services prior to the time that she stole Ms. Pennington's identity as the Dell Financial Services account was opened in January 2004, and Ms. Chavez did not steal Ms. Pennington's identity until sometime later in 2005. Based upon MCM statements that paymenst had been made on the account, the likely event is that Ms. Chavez made payments on the account for a while and then allowed it to lapse into default. MCM did not have a contract or credit application signed by Ms. Pennington or any factual basis to demand payment from Ms. Pennington in any fashion. At some point, MCM obtained Ms. Pennington's consumer credit and contact information and began to pursue Ms. Pennington for the payment of the Dell Financial Services account. MCM never had a valid business relationship with

Ms. Pennington and would have known from examination of the account that Ms. Pennington was not obligated to pay on the account. MCM never had a permissible purpose to obtain any consumer credit report information regarding Plaintiff Teresa Pennington.

6. On February 3, 2009, Ms. Pennington received a phone call at 1:20 p.m. from MCM as memorialized on Ms. Pennington's caller id. Ms. Pennington did not speak to anyone at MCM that day, but she noted the call.

7. On February 11, 2009, Ms. Pennington received another phone call at 3:05 p.m. from Albert, an MCM representative. Ms. Pennington spoke to Albert, and he informed Ms. Pennington that he was attempting to collect on a Dell Financial Services account. Ms. Pennington explained that she was the victim of identity theft and that she never had an account with Dell Financial Services. Albert argued with Ms. Pennington and stated that because some payments had been made on the account, the account could not have been an identity theft account. Ms. Pennington tried to explain it was not her account and that they had mixed up the identity thief's account with her. Ms. Pennington instructed MCM and Albert not to contact her anymore and that she was not responsible for payment. MCM ignored her denials of responsibility and direction to cease all further contact and continued to harass her for the money.

8. More than five days expired from Ms. Pennington's contact with Albert, and she never received any written communications from MCM. Under the FDCPA, MCM had a duty to send Ms. Pennington a validation notice within five days from the first contact. Because she never received a validation notice as required by the FDCPA, MCM denied Ms. Pennington an opportunity to dispute the validity of the account.

9. Approximately two months elapsed from the time that Ms. Pennington spoke to Albert. However, on April 5, 2009, MCM renewed its collection efforts with new vigor and called her at 8:35 a.m. and 12:20 p.m.

10. On April 6, 2009, MCM continued its telephone harassment campaign by calling at 7:13 p.m.

11. On April 8, 2009, Ms. Pennington received a phone call at 8:58 a.m., and on April 9, 2009, Ms. Pennington received four phone calls at 8:45a.m., 11:30 a.m., 12:12 p.m., and 4:29 p.m.

12. On April 10, 2009, Ms. Pennington received two more phone calls at 9:02 a.m. and 11:56 a.m., and she received another call at 3:38 p.m. on April 11, 2009. All told, Ms. Pennington received 14 calls in the span of one week, despite the fact that she told MCM she was an identity theft victim, directed MCM not to contact her further, disputed the collection account over the phone, and never received a validation notice as required by the FDCPA.

13. A few weeks later, Ms. Pennington received the first written communication from MCM. This letter, dated April 23, 2009, continued to represent that Ms. Pennington owed the money on the collection account when she was in no way responsible for the account.

14. On May 30, 2009, Ms. Pennington again spoke to an MCM representative named Joel. Ms. Pennington explained yet again that she was the victim of identity theft, did not open the account, and was not responsible for repayment of the account. In response, Joel continued to request that Ms. Pennington make payment on the account. Later that day, Ms. Pennington spoke with Shamona from MCM, and Shamona stated

that MCM had sent her numerous letters and that Ms. Pennington was responsible for repayment. Ms. Pennington again tried to explain that she was not the individual responsible for the account and that the only letter that she had ever received was from MCM dated April 23, 2009. MCM totally ignored Ms. Pennington's assertions and proceeded with collection.

15. Despite the fact that MCM had received multiple communications that the account was related to a completely different person, it disregarded the information and continued to collect against Ms. Pennington. According to a Trans Union consumer credit file disclosure, Trans Union provided Midland Credit Management with consumer credit information related to Ms. Pennington in June 2009.

16. Based upon the requirements of the Fair Credit Reporting Act, Midland Credit Management lacked a permissible purpose to obtain a copy of any consumer credit information regarding Ms. Pennington. In addition, Midland Credit Management knew that Ms. Pennington was a victim of identity theft and knew that it had no basis to certify to any credit reporting agency that it was authorized to obtain Ms. Pennington's credit information.

17. In order for MCM to obtain a copy of Ms. Pennington's credit information, MCM had to certify that the purpose for obtaining the report was related to both a "credit transaction" involving Ms. Pennington; **and** in connection with the collection of an account owed by Ms. Pennington.

18. At the time that it obtained a report from Trans Union regarding Ms. Pennington, MCM knew that she claimed not to have opened the account and was the victim of identity theft. MCM knew that the Dell collection account was not a "credit

transaction" involving Ms. Pennington because it would not have any credit application or other proof that Ms. Pennington actually initiated the account. With actual knowledge of the identity theft, MCM acted with a conscious and reckless disregard for its obligations under the Fair Credit Reporting Act by obtaining credit information regarding Ms. Pennington without a permissible purpose.

19. MCM's relentless effort to collect money from an identity theft victim despite numerous notifications that it was not hers constitutes a conscious disregard of the laws governing such conduct. MCM failed to provide the proper notices to Ms. Pennington as required by the FDCPA and thereafter violated the FCRA by obtaining a copy of her credit information without a permissible purpose. Ms. Pennington requests actual damages, statutory damages, and punitive damages based upon these violations.

## COUNT I
### Violation of Fair Debt Collection Practices

20. Plaintiff incorporates paragraphs one (1) to nineteen (19) as if fully stated herein.

21. Defendant MCM violated the FDCPA §1692d by causing Ms. Pennington's phone to ring repeatedly, the natural consequences of which were to harass and oppress the Plaintiff. In a one week span, MCM caused Ms. Pennington's phone to ring 14 times, including three calls on April 7, 2009 and four calls on April 9, 2009. MCM contacted Ms. Pennington in this manner because it knew that she claimed to be the victim of identity theft, refused to make any payment and the only way it could get her to pay the identity theif's bills was through harassment and intimidation.

22. Defendants violations of §1692d caused Plaintiff to go through the needless stress and strain from unwanted calls and harassment from debt collectors

7

despite the fact that the debt did not belong to her as she informed MCM representatives repeatedly during the phone calls. Plaintiff requests actual damages awarded by a jury for her frustration, anger, upset, and humiliation, as a result of these violations. Plaintiff also requests statutory damages, attorneys fees, and costs as permitted by statute

23. Defendant violated §1692g by failing to include the 30-day validation notice required by the statute. Additionally, Ms. Pennington never received the requisite consumer validation notice as required by the statute within five days of contact on February 11, 2009.

24. As a result of these violations Plaintiff is entitled to actual and statutory damages, along with attorneys fees and costs under §1692k.

## COUNT II
### Violation of Fair Credit Reporting Act

25. Plaintiff incorporates paragraphs one (1) to twenty-four (24) as if fully stated herein.

26. MCM negligently, willfully, and intentionally violated the Fair Credit Reporting Act by using and/or obtaining a consumer report regarding Ms. Pennington from Trans Union without a permissible purpose. MCM also negligently, willfully, and intentionally violated 15 U.S.C. §1681b(f) when it provided a false certification that it has a permissible purpose for accessing Ms. Pennington's report.

27. MCM knew that Ms. Pennington was the victim of identity theft and claimed that the account was not hers in February 2009. Rather than cease collection or provide a proper validation notice as required by the FDCPA, MCM instituted a collection campaign designed to harass Ms. Pennington into paying the debt through numerous calls in the month of April 2009. Despite speaking to Ms. Pennington again in

May 2009, MCM went ahead and obtained a copy of a consumer report from Ms. Pennington in June 2009. MCM had no permissible purpose to obtain this report and had actual knowledge that it had no basis to certify to a credit reporting agency that it had a permissible purpose to obtain the information.

28. Discovery is necessary to uncover how MCM obtained Ms. Pennington's information originally such that it was able to contact her in February 2009. Given that the most basic form of "skip tracing" by debt collectors requires the obtaining of information from credit bureaus, MCM in all likelihood violated the FCRA on a separate occasion by obtaining a consumer report prior to the report that it obtained in June 2009.

29. Moreover, discovery is also necessary as to the scope of consumers that have told MCM that they are the victim of identity theft only to have MCM falsely certify and obtain a credit report regarding that consumer. Ms. Pennington may be a member of a class of consumers whose rights have been violated by MCM under the FCRA.

30. Because MCM violated the FCRA by accessing Ms. Pennington's consumer report and by failing to certify properly that it had a permissible purpose to obtain the report from a credit reporting agency, Ms. Pennington requests actual damages, statutory damages, punitive damages, attorneys fees and costs under 15 U.S.C. §1681n and 1681o.

### Prayer for Relief

Wherefore, the Plaintiff prays that the Court award the following relief:

a) Actual damages based upon MCM's violations;

b) statutory damages against MCM based upon their violations of the FDCPA;

c) statutory damages against MCM based upon its violations of the FCRA;

d) punitive damages against MCM based upon its violations of the FCRA;

e) costs and reasonable attorneys' fees incurred by the Plaintiff;

f) prejudgment interest from June 1, 2009,

g) all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury as to all issues against all defendants.

Respectfully submitted
Teresa L. Pennington

*Thomas Byrn Christiano*
By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
516 ½ Oronoco Street
Alexandria, Virginia 22314
(703) 739-7621