**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **TERESA L. PENNINGTON,** | ) | |
| | ) | |
| Plaintiff**,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 1:10cv112 |
| | ) | |
| **MIDLAND CREDIT MANAGEMENT, INC.** | ) | |
| | ) | |
| Defendants**.** | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER**
**MOTION FOR SANCTIONS**

Plaintiff Teresa Pennington, by counsel, files her memorandum in support of her motion for sanctions and states as follows:

## I.   INTRODUCTION

Discovery in this case has been difficult and delayed from the start, and there is no indication that conditions will improve.  Despite clear orders from the court and instructions from the bench, Defendant remains defiant and contemptuous of the court's instructions forcing this motion for sanctions based upon the violations of the court's previous orders.  This court has generously provided the defendant multiple opportunities to cure its deficient responses, yet Midland refused to take advantage of the opportunities and did what it wanted to do rather than what the court instructed it to do.  With little time left in the discovery period, MCM still has not identified any witness that will support its Answer and defenses, documents are still missing, defendant has not provided net worth information, and we have been unable to take the deposition of <u>any</u> of the defendant's witnesses.  Conversely, defendant has been able to conduct and arrange for all of the discovery that it sought to prepare its case.  Multiple attempts to meet and

confer and resolve these issues have proven futile and just another delaying tactic in accordance with Local Rule 37(E) via both telephone calls and emails.

## II.   MCM'S RESPONSE TO THE COURT'S ORDER TO COMPEL

In the hearing on June 11, the court made clear that supplemental responses had to be served on the Plaintiff no later than close of business on June 16 and provided clear instructions as to which responses needed to be supplemented.   Counsel for Plaintiff stayed past 7:00 p.m. waiting for the responses based upon an assurance by Mr. Lynch at 6:00 p.m. that "they should be on the way." Despite the assurance of being on the way, the responses were not sent on the 16th and were instead delivered by Fed-Ex on the morning of the 17th.   As part of the meet and confer process, counsel for Defendant displayed no regard for the court's order or counsel's time and took the position that Federal Express delivery the next day was appropriate.   However, the court's order said by close of business the 16th, and the delay in transmission made it impossible to review and discuss the discovery responses in time to file this motion last week.   Despite the delay, the supplemental responses were deficient, incomplete and in direct violation of the courts clear instructions.   Defendant failed to identify any witnesses with knowledge of facts that would support the answer and defenses raised, provided the very response to the net worth question that the court said was unacceptable and withheld documents as detailed herein.   Plaintiff attaches a copy of the second supplemental interrogatory responses hereto as Exhibit "A."

### A. DEFENDANT FAILED TO CONTACT THE WITNESSES AND PROVIDE SUBJECT MATTERS KNOWN TO THEM.

One of the biggest problems with the initial responses was the failure to identify the subject area of each potential witness with knowledge relevant to the case.   Plaintiff

pointed out that in response to Interrogatory No. 21 which asked for the identity of the individuals that assisted in preparing the responses, MCM did not identify any fact witness in the case.  In the Second Supplemental response the defendant made no change to its response to Interrogatory No. 21.  In efforts to meet and confer on June 18th this issue was addressed and the response from defendant was that the court did not instruct it to amend that particular interrogatory response.   The supplemental response to Interrogatory No. 1 did not provide the subject matters known to the various witnesses, but rather stated what the defendant "believed" the individuals knew. Coupled with the failure to amend the response to Interrogatory No. 21, the supplemental response clearly indicated that none of MCM employees that it identified as witnesses had been contacted to discover what they actually knew.  To further clarify that none of the MCM witnesses had been contacted as directed by the court, MCM provided supplemental 26(a) disclosures in which it failed to identify any MCM employee with knowledge of any facts to support its Answer and defenses and stated instead that: **"The identification of employees of MCM is still under investigation."**  (emphasis added). Despite two orders from this court directing MCM to provide full responses, it still states that they are in the process of investigating the facts known to the MCM employees.  One and a half weeks after the date mandated by the court for providing supplemental responses, it still has not completed its investigation of the MCM witnesses or provided counsel for the plaintiff with notice as to what these witnesses actually know.

**B.      DEFENDANT DID NOT PROVIDE ANY INFORMATION CONCERNING ALBERT AKADA ONE OF THE CENTRAL FACT WITNESSES OF THE DEFENSE.**

In the Complaint, the Plaintiff identified a conversation with an MCM employee named Albert that the defendant failed to identify in either the first or second responses to interrogatories.  In the Second Supplemental response, Defendant still did not identify properly Albert Akada in response to Interrogatory No. 1 or provide any information about him other than: "Albert Akada, location and contact information unknown."  In the supplemental response to Interrogatory No. 3, defendant did provide the following additional sentence: "On February 11, 2009, Albert Akada placed a phone call to 571-261-9926 and spoke with a person identifying herself as Teresa Pennington."  Despite the fact that the phone log notes provide additional information, MCM limited the information that it provided about Mr. Akada to that one sentence and a statement that his contact information was unknown.  In the meet and confer, Plaintiff requested that MCM review Mr. Akada's employment file and at least provide a last known address and phone number, but it failed to do so.  MCM has made it impossible to locate Mr. Akada in time to depose him in this case.  Because Mr. Akada has not been identified properly, MCM should be prohibited from disputing any facts related to interactions between him and Teresa Pennington as there is no genuine basis for the dispute.

**C.      DEFENDANT DEFIED THE COURT'S INSTRUCTION CONCERNING NET WORTH.**

Despite the fact that the court specifically instructed MCM to obtain and provide a net worth for the company by close of business on June 16th, it elected to defy the court's authority and provide no answer at all.  Instead of actually answering the question, Defendant directed Plaintiff to try and figure out the number on its own and

directed Plaintiff to review information for the parent company Encore Capital Group, Inc. by examining its website and SEC filings.  Following the meet and confer on June 18, 2010, counsel for the defendant promised supplemental responses by Monday June 21st, but provided nothing.  If, as defendant represented, the information could easily be obtained from the documents identified, it should have had no problem providing a net worth figure by examining the very documents it told plaintiff to see.  MCM subsequently promised the net worth information by close of business Thursday, but it did not provide the information then either.  On Friday morning, MCM claimed that it had "every expectation of providing this information to you before end of next week." MCM's handling of this information is a microcosm of its handling of discovery as a whole: obstruct, delay, discuss, promise responses by a certain date, break those promises, ignore court orders, rely on documents pursuant to Rule 33(d) that even it cannot use to answer the interrogatory, make new promises and break them, more delay. As with the failure to disclose Mr. Akada's last known address, there was simply no valid reason not to provide this information for so long.

**D.    MCM IS STILL WITHHOLDING DOCUMENTS CRITICAL TO THE INVESTIGATION OF THE CASE AND IMPROPERLY REDACTING THEM.**

At oral argument, Plaintiff informed the court that the defendant was suggesting a defense that it had purchased the Dell account in issue and had failed to identify any witness or documents that would support that statement.  The court specifically instructed the Defendant to provide the full purchase contract despite the objection from the defendant that it was proprietary and should not be disclosed without the permission of Dell.  The court ordered the defendant to produce the document and stated that if Dell

were truly concerned about the disclosure it could seek a protective order before the 16th which it never did.  Despite the fact that no protective order was filed, MCM elected to apply its own protective order by concealing the relevant information concerning the account and purchase price. In clear violation of the court's order MCM produced an unsigned copy of contract with multiple redactions including the identity of the entity selling the accounts (MCM 312); total unpaid balance (MCM 338); purchase price percentage (MCM 338) and Purchase price (MCM 338). (due to a confidentiality identification this document has not been attached to the motion).  In the meet and confer, Plaintiff's counsel pointed out to the defendant that the document is an unsigned copy and marked both confidential and attorney's eyes only such that it was inappropriate to make any redactions.  The response was that Plaintiff still was not entitled to that confidential information.  This too was in contempt of the court's instruction to produce the contract unless Dell filed a motion for a protective order first.  MCM has failed to admit that it is debt collector in its Answer to the Complaint presumably because it may intend to argue that it acquired the debt at issue in this litigation.  Plaintiff believes that the proper sanction for the failure to provide this information is a determination that for purposes of this action, MCM is a debt collector as defined under the FDCPA.

The next group of documents that were improperly produced is the documents related to MCM's acquisition of the Plaintiff's credit report.  One of the critical issues in the case concerned the accessing of the Plaintiff's credit information through Trans Union without a permissible purpose.  There was no reasonable reason not to produce this information long ago let alone after the court's order to compel.  Just prior to the motion to compel, Defendant claimed that the information could not be obtained in less

than 14 days, but it miraculously appeared in the package of information delivered a short time later on June 17th. In fact, some of the documents produced on the 17th indicated at the bottom that MCM had printed them out **prior** to the hearing on the motion to compel. Once again, MCM presented the information without any of the codes or keys to reasonably interpret the materials or any explanation in the interrogatory responses to questions that concerned the documents. Worse yet, there are vast amounts of missing information and documents. At MCM 369-395 Defendant produced a collection of documents identified as "TUCOMBO." That collection of documents was restricted to persons named Teresa Pennington and only covered the period June 2002 through August 2007. The document produced totally omitted the relevant period when it was accessing the plaintiff's credit file information from Trans Union. Thus, none of the TUCOMBO information provided any insight into the information that it obtained on Teresa Pennington the plaintiff in this case. In Interrogatory No. 7, MCM admitted pulling the plaintiff's credit file nine (9) times between September 2007 and March 2010, yet the TUCOMBO information stops just prior to the date of the first admitted pull of her information. The next set of unidentified documents was identified as TUBASE and it covered the period May 2008 to June 2010. That collection of documents started almost one year after the initial pulls began in September 2007. Defendant also produced another collection of unidentified and unexplained documents called TUPROD that ranged between May 2008 and March 2010. Despite all the additional people identified in response to interrogatory No. 1, Defendant failed to identify any witness that could discuss the subject matter of these three collections of documents (TUCOMBO, TUBASE AND TUPROD). Interrogatories No. 7 and 9 were intended to discover

information about these documents and the accessing of credit information from Trans Union, but defendant made no effort to respond fully and instead relied upon Rule 33(d) and told Plaintiff to see MCM 369 – MCM 441.  Just like the net worth question, even MCM could not discern the answers to the Interrogatories 7 and 9 from these documents. The documents are far from self explanatory and all the necessary codes are missing such that they cannot be deciphered properly even if we knew what the documents were supposed to mean.  Finally, the interrogatory responses indicate that documents exist between MCM and Experian, but Defendant did not identify the documents in response to interrogatories.  Plaintiff believes that these documents have not been produced as well.

**E.      DEFENDANT DID NOT SUPPLEMENT INTERROGATORIES AS ORDERED BY THE COURT.**

The court specifically instructed the Defendant to supplement Interrogatory No. 5 which requested information about all written or oral communications with the plaintiff. The original response simply referred to eight documents with nothing more.  The second response said see Interrogatory No. 1 which provided no information about the communications and the final supplemental response simply said see Interrogatory No. 15 which contained no new supplementation and continued to use language beginning with "Defendant did …" without identifying what employee of the defendant did what. Conspicuously absent from the response to Interrogatory No. 5 was any mention either directly or by reference to the conversation that the plaintiff had with Albert Akada.  The defendant simply violated the court's direction to supplement this response.

The response to interrogatory No. 13 was and remains nonresponsive despite a direction to supplement.  The question presented sought to discover how it was that the

defendant obtained the plaintiff's address in Bristow, Virginia and why it believed that she was the proper Teresa Pennington.  The supplemental response was virtually identical to the original response that was directed to be supplemented and therefore not a supplementation.  This is a central issue in the case, and the defendant refuses to provide us with a clear and concise answer.  All the Plaintiff seeks to discover is what facts lead MCM to believe that she was the Teresa Pennington that defaulted on the Dell debt.  The TUBASE and TUCOMBO documents demonstrate that Teresa L. Pennington is a common name and there were many different ones to choose from, yet we still cannot discover what information lead it to believe that Trooper Pennington was the responsible one.

Interrogatory No. 16 sought to discover the communications with the credit reporting agencies, and the court ordered the Defendant to supplement the response. Rather than comply with the court's order the defendant relied upon Rule 33(d) again and referred Plaintiff to a collection of documents that do not answer the question and are demonstrably incomplete based upon the dates of the documents.   In a shocking development, Plaintiff provided counsel this week with a credit file that she obtained recently from Trans Union that demonstrated that MCM obtained a credit report in August 2009.  MCM has never identified in discovery that it obtained this information, which would be further proof of its complete disregard for the requirements of the FCRA. In any event, the acquisition of the credit file would be responsive to any number of discovery requests including this request.  Plaintiff also inquired what information MCM claims that it sent to Trans Union in order to obtain the credit information on the plaintiff, and MCM simply stated "see MCM 441."  Again the issue remains, why did you chose

this particular Teresa Pennington.  Consistent with other response that relied upon Rule 33(d), the document MCM directed us to see for the response was no help at all.  MCM 441 is marked as confidential, so we have not attached it.  However, the document shows six boxes of information that only covers one column of the page and the vast majority of the page is blank. Each of those six boxes displays the same information: "0000."  Worse yet, the identifying information at the top of each of those six columns suggests that it is only part of a larger collection of information since the columns or boxes start with 09 and go to 14.  MCM failed to produce the information in boxes 1-8 or after 14.  How the defendant believes that document MCM 441 explains what it sent to Trans Union from September 2007 to March 2010 to obtain credit information on the plaintiff is unknown and demonstrates the persistent abuse of Rule 33(d) which is prevalent throughout the supplemental responses compelled by the court.

Interrogatory No. 19 sought information related to the training of its employees for compliance with the FDCPA and the FCRA.  This information is crucial to MCM's affirmative defenses 5,8,13, and 16.  At no point in any of the answers to Interrogatories has MCM identified specifically how it relied on any regulatory rulings involving the FCRA or FDCPA, any advisory opinions or regulatory agencies, any provisions so that it believed it had qualified immunity, or any procedures in place to avoid clerical errors.  Not one of the people identified in response to Interrogatory No. 1 is "believed" to have any information concerning training of MCM employees.  In this interrogatory, MCM can't even explain how it has training in place to make these potential defenses in the case.  Accordingly, Plaintiff believes that the Court should strike affirmative defenses 5,8,13 and 16.

**F.      DEFENDANT HAS NOT PRODUCED ANY WITNESSES FOR DEPOSITIONS AND OBJECTED TO PREPARING A 30(B)(6) REPRESENTATIVE FOR MANY OF THE TOPICS IDENTIFIED.**

Plaintiff not only has had difficulty obtaining responses to interrogatories and document requests but now is being prevented from taking depositions or addressing relevant topics.  Based upon the defendant's failure to identify any of the topic areas that the potential witnesses knew or even produce the relevant documents, Plaintiff could not determine who needed to be deposed.  In supplemental 26(a) disclosures of the witnesses that the defendant may use to support its claims or defenses, MCM identified Corporate Counsel Brian Frary and Iliana Gonzales.  Mr. Frary was identified as having knowledge "concerning post-suit investigation" and Ms. Gonzales had information concerning the subpoena issued in a prior matter.  Despite the fact that the defendant has asserted 22 affirmative defenses, it has failed to identify any witness that will support those defenses. It did however, state as late as June 16, 2010 that "**The identification of employees of MCM is still under investigation.**"  Two weeks before the discovery cut-off MCM still has not identify one employee that can support its Answer or affirmative defenses. Despite two orders to compel and an additional nine (9) days since the court's deadline for responding, MCM is still leisurely investigating what its employees know and will likely provide a supplemental response on the last day of discovery.  Defendant also presumes and anticipates that the court will extend the discovery period so that plaintiff can ultimately depose its employees.

Plaintiff notified the defendant that it wanted to take the deposition of the three witnesses that spoke with the plaintiff: Shimona Jones, Ria Jones and Albert Akada. Plaintiff had provided defendant with five different available dates for depositions over a

two week period, and it has claimed that they are not available any of those dates. Counsel for the defendant is unavailable to defend depositions next week, yet represents that it intends to take the depositions of two of the plaintiff's witnesses that same week. Shimona Jones and Ria Jones are located in India and according to counsel for defendant are unavailable the entire week of next week without any explanation as to why or if anyone from MCM has even discussed their available dates for depositions with them. The only time that the defendant seems to be willing to make any witness available is the one week in the discovery period where lead counsel has scheduled a family vacation (July 5-9) and advised them that he is unavailable.   Defendant delayed providing discovery, defied court orders to compel, withheld documents, refused to make witnesses available for deposition on any of five alternative days provided and now claims that it is the fault of the plaintiff that they cannot take the depositions on the final days of the discovery period.

Not only has the defendant failed to produce its witnesses for deposition, but it has objected to many of the topics identified in the 30(b)(6) notice including but not limited to:

All facts concerning the denials and defenses asserted by Midland;

All efforts by Midland to locate documents in this case;

All efforts taken by Midland to contact the witnesses in the case;

The date that anyone from Midland contacted any of the witnesses in the case;

Defendant actively seeks to conceal the fact that it never contacted any of its own employees to determine what occurred and made no effort to locate any of the documents until after the court entered the order to compel.

To date the defendant still has not provided a date for the corporate representative depositions and claims that it still does not know what witnesses will be participating in that deposition. The court ordered production of the final supplementation on June 16. Plaintiff noticed the corporate representative deposition on June 14th for June 21st. In the email sent with the notice, Plaintiff provided four additional dates that ranged over the span of two different weeks in case the 21st was not available. Defendant would not produce the corporate representative on the 21st as noticed. As of June 24 counsel for defendant stated that he still did not know who would be testifying on behalf of the corporation, but he did say that he intended to use multiple people, some of whom had not been identified in response to Interrogatory No. 1. Defendant is simply delaying and preventing the plaintiff from preparing her case for trial.

III.     **SEVERE SANCTIONS ARE WARRANTED BASED UPON THE TOTALITY OF THE CIRCUMSTANCES OF MCM'S BEHAVIOR IN DISCOVERY.**

Every step of the way in discovery, MCM has been difficult, obstructionist, and acted in a calculated manner to delay discovery and hide documents and witnesses. It started from the response to the subpoena in a previous case where it claimed it had no documents, and it continued throughout the entire discovery period. Defendant did not respond timely or properly to discovery and made multiple promises as to when original and supplementary responses would be forthcoming and each time it failed to honor those promises. Not only has defendant failed to honor its promises to opposing counsel, but it has also failed to comply with the court's orders concerning discovery. Prior to filing this motion, we scheduled a telephone conference to discuss the remaining issues and counsel promised to supplement by Monday June 21st, yet it once again failed to comply with that

promise and still has provided no new supplementation.  MCM has been provided with multiple opportunities to rectify these failures and elected not to do so.  The Plaintiff has been severely prejudiced by these delaying tactics and just as the Plaintiff has stated from the outset, MCM and its counsel have effectively run out the clock on discovery and prevented the plaintiff from conducting any follow-up discovery.  With just two weeks remaining in the discovery period it still has not properly identified the witnesses that can support its denials and affirmative defenses and claims that the "**identification of employees of MCM is still under investigation.**"

Rule 37(b)(2) permits the court to order multiple forms of relief including: (A) designated facts shall be taken as established; (B) refusing to allow the disobedient party to support or oppose designated claims or defenses; (C) striking out pleadings or parts thereof; (D) rendering a default judgment against the disobedient party; or (E) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.  *See* F.R. Civ, P. 37(b).  Moreover, the Court has the power to hold the offending party in default after considering "how the absence of such evidence [not produced] would impair [the other party's] ability to establish their case" *See Wilson v. Volkswagen of America, Inc.* 561 F.2d 494, 505 (4th Cir. 1977).  Consumer litigation in this court has proven difficult with many corporate defendants who do not care or take seriously the court's expedited discovery schedule.  Plaintiff had similar problems in both the *Sloane* and *Robinson* cases with Equifax, where the court severely sanctioned Equifax for behavior that is similar to, but not as egregious as, the behavior that occurred in this case: delaying production of documents, producing incomplete subsets of documents,

inadequate identification of witnesses, failure to make witnesses available for depositions and failure to identify facts in support of denials and defenses.

Clearly the refusal to provide the net worth information as directed by the court or to supplement the specific interrogatories as directed, constituted complete contempt for the court's order and must be sanctioned. The refusal to even talk to the MCM employees who handled this matter was another blatant violation of the court's order as was the failure to produce all the relevant documents as instructed. MCM cannot be heard to complain about the striking of its affirmative defenses and Answer since it still has not identified one witness that will support those two. In the supplemental 26(a) disclosures it failed to identify any employees that will support the Answer and defenses and a close examination of the topic areas described for the witnesses identified in the second supplemental response to Interrogatory No. 1 proves that not one of them is identified as having any knowledge that will support the denials and defenses. MCM has been provided every opportunity to cure these deficiencies and failed to do so. The court did not impose sanctions after the first violation of its order and as a result MCM did not take the court's second order seriously. The totality of the conduct in this case is so outrageous that only the most severe sanctions will suffice.

Respectfully Submitted,
TERESA L. PENNINGTON

_____/s/_____

A. Hugo Blankingship, III
Va. Bar Number 26424
Attorney for Teresa L. Pennington
Blankingship & Christiano, P.C.
1984 Isaac Newton Square, # 304
Reston, Virginia 20190
(571) 313-0412
(571) 313-0582 (fax)
hugo@blankingship.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of June, 2010, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system which will then send a

notification of such filing (NEF) to the following:

Counsel for Defendants
John Lynch, Esq.
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
john.lynch@troutmansanders.com

_____/s/_____

A. Hugo Blankingship, III
Va. Bar Number 26424
Attorney for Teresa L. Pennington
Blankingship & Christiano, P.C.
1984 Isaac Newton Square, # 304
Reston, Virginia 20190
(571) 313-0412
(571) 313-0582 (fax)
hugo@blankingship.com