IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

**TERESA L. PENNINGTON,**

    **Plaintiff,**

    v.                                                                                          Civil Action No. 1:10cv112

**MIDLAND CREDIT MANAGEMENT, INC.,**

    **Defendant.**

**DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

        Defendant Midland Credit Management, Inc. ("Midland"), by counsel, pursuant to Fed. R. Civ. P. 37 and Local Rule 37, submits its Memorandum in Opposition to Plaintiff Teresa L. Pennington's ("Plaintiff") Motion for Sanctions ("Motion") (Docket No. 23).

**INTRODUCTION**

        This Court's Order from the June 11, 2010 hearing regarding Plaintiff's Motion to Compel (Docket No. 11), stated that Midland was to serve supplemental discovery responses by close of business on June 16, 2010. Midland served on June 16, 2010, via Priority FedEx, (1) Midland's Second Supplemental Answer to Plaintiff's First Set of Interrogatories, (2) Midland's Third Supplemental Responses to Plaintiff's Requests for Production of Documents, (3) Privilege Log, (4) Verification Pages, (5) Midland's Second Supplemental Rule 26(a)(1) Disclosures, and (6) documents bates numbered MCM 178 – MCM 445. Plaintiff received Midland's supplemental discovery responses on June 17, 2010, at 9:09 a.m. Midland's supplemental discovery responses contained approximately 382 pages of documents. A copy of the Midland's Second Supplemental Responses to Plaintiff's Interrogatories is attached as **Exhibit 1**, and Midland's Third Supplemental Responses to Plaintiff's Requests for Production

of Documents are attached as **Exhibit 2**. Midland did not violate the Court's Order by sending the supplemental discovery responses via Priority FedEx.

Plaintiff's Motion is not warranted in fact or law. Plaintiff's counsel attempts to impose discovery burdens unsupported by law, and misinterprets the Court's rulings from the hearing on June 11, 2010. Plaintiff's counsel pursues this Motion trying to pressure Midland to make concessions on other discovery issues, to spend time interpreting documents and conducting Plaintiff's own investigation, and attempts to harass Midland to settle this case. Midland's discovery responses are very detailed and fact specific. Midland has and will continue to supplement its discovery responses if additional documents or information are located.[1] Plaintiff has noticed the corporate deposition of Midland on forty-one (41) topics. If Plaintiff needs further information or has questions about interrogatory answers or documents, then she is free to question Midland at that time. Plaintiff's Motion should be denied in its entirety.

## ARGUMENT

**A.      Standard for Rule 37(b) Sanctions.**

In determining whether sanctions should be imposed, the Fourth Circuit has articulated the following four part test:

> (1) whether non-complying party acted in bad faith;
>
> (2) amount of prejudice noncompliance caused the adversary;
>
> (3) need for deterrence of type of non-compliance; and
>
> (4) whether less drastic sanction would be effective.

---

[1] For example, after substantial research, Midland located and produced the last known address and phone number for a former employee, Albert Okada, on Tuesday, June 29, 2010. See **Exhibit 3**.

*Sawyers v. Big Lots Stores, Inc.*, 2009 U.S. Dist. LEXIS at *6 (W.D. Va. 2009); *Spicer v. Universal Forest Prods.*, 2008 U.S. Dist. LEXIS 77232 *3 (W.D. Va. 2008).  In determining "what sanctions are appropriate, the court must focus on determining a sanction that fits the case at hand, considering the potential harm to the party seeking discovery and the conduct of the nonproducing party." Id. at *5.  Further, "[e]ven in those cases where it may be found that failure to produce results in the discovering party's case being jeopardized or prejudiced, it is the normal rule that the proper sanction 'must be no more severe…than is necessary to prevent prejudice to the movant." *Taylor v. Specialty Marketing, Inc.*, 1993 U.S. App. LEXIS 1924 at *5 (4th Cir. 1993) (quoting *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 504 (4th Cir. 1977)).  Furthermore, "[s]evere sanctions such as striking defenses or counterclaims require careful balance because they can brush against a party's right to 'trial by jury and a fair day in court'….a struck defense or counterclaim can amount, functionally, to dismissal or default judgment.  The U.S. Court of Appeals for the Fourth Circuit considers dismissal extreme, and state that a court should do so only when 'the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules." *Progressive Cas. Ins. Co. v. Cockrell's Marine Ry.*, 2007 U.S. Dist. LEXIS 81798 *7 (E.D. Va. 2007).  As discussed below, Midland has complied or attempted to comply with the Court's order, or simply needed more time to respond completely.

**B.**   **Midland provided knowledge for each employee in compliance with the Court's order.**

Plaintiff argues that Midland has not investigated each employee's knowledge because each employee is not identified in answer to Interrogatory 21. During the June 11, 2010 hearing, the Court denied Plaintiff's Motion to Compel as to Interrogatory 21, explaining to Plaintiff that the results of investigation are work product, generated in anticipation of litigation

- 3 -

and trial, and that information about the investigation and results are attorney-client privileged. Midland has supplemented is response to Interrogatory 1, with the results of what it understands each employee's knowledge to be.

Plaintiff further argues that Midland's supplementation is insufficient because it uses the term "believes." Midland cannot know for certain what any employee would say if called to testify under oath, however, based upon results of its investigation, Midland has identified what it understands to be the subject matter of each employee's knowledge of the facts of this case. The standard is to provide relevant and non-privileged information "so that requesting party has a reasonable opportunity to obtain further discovery leads and information" - this has been satisfied.

What Plaintiff wants is unduly burdensome, time consuming and expensive. Plaintiff wants Midland to *depose* all of its own employees and then report back to Plaintiff. In essence, Plaintiff is asking Midland to do Plaintiff's work / investigation, and then, Plaintiff will likely take depositions and if there is any deviation from what Midland tells Plaintiff, during the deposition testimony, Plaintiff will likely move for sanctions against Midland.

Plaintiff then argues that Midland's Second Supplemental Rule 26(a)(1) Disclosures are insufficient because it does not identify any employees with factual knowledge. This Court has already denied this argument of Plaintiff's Motion to Compel, on the grounds that a party need only identify persons upon whom it will rely to support its defenses. Midland did identify two employees with post-suit investigation knowledge; Brian Frary and Tanya Flores. However there were no individuals with personal knowledge of facts to support defenses to Complaint because this is a corporation. Midland is still investigating who to identify / designate

in response to Plaintiff's Rule 30(b)(6) Notice of Deposition (forty-one (41) topics) and will supplemental its disclosures and answers accordingly.

C. **Midland provided last known contact information for Albert Okada as soon as it became available.**

This Court has previously denied Plaintiff's Motion to Compel on this issue. During the meet and confer, Plaintiff's counsel asked for the contact information, however, Midland did not have any. Midland agreed to further investigate the location of Mr. Akada. While further investigating the location of Mr. Akada, it was determined there was a mistake in the spelling of the last name, and the correct spelling is "Okada." Midland then provided Plaintiff with the correct spelling of the former employee, and provided Plaintiff with the last known contact information (address and telephone numbers) for Mr. Okada. *See* **Exhibit 3**. There is still sufficient time for Plaintiff to depose Mr. Okada.

D. **Net Worth (Interrogatory 23).**

In response to the Court's Order at the June 11, 2010 Hearing, Midland provided a supplemental interrogatory response on June 16, 2010. Midland did not have independent audited documentation showing its net worth, gross or net revenues. Midland is a wholly-owned subsidiary of Encore, a publicly traded company. Midland's financial information is incorporated into Encore's financial information, which was referenced in the supplemental interrogatory answer and publicly available.

Plaintiff is correct that Midland's counsel has been expecting that this information would be available by certain dates. Unfortunately, this process of creating an estimate of Midland's net equity response has been very time consuming since it did not exist previously. Midland has filed a Motion for Protective Order on this issue (*see* Docket No. 31). This process is now complete. At the hearing on July 2, 2010, Midland will provide its estimate net

equity/worth and seek protection on its use and disclosure in according with its Motion for Protective Order. Plaintiff will be permitted to depose a prepared Midland corporate representative on this issue.

Any delay in providing a specific estimate on net worth has not caused <u>any</u> prejudice to Plaintiff. Plaintiff has not yet deposed Midland and there has been no finding supporting any award of punitive damages. Often this net worth issue is deferred or bifurcated until necessary in the proceedings.

### E.     **Plaintiff's argument that critical documents have not been produced is meritless.**

Midland produced the 2007 Receivable Purchase Agreement (MCM 307 – MCM 345) as Confidential and Attorney Eyes Only, pursuant to the terms of the Protective Order (Docket No. 14) with its June 16, 2010 Supplemental Discovery Responses. Plaintiff argues that Midland redacted the "identity of the entity selling the accounts (MCM 312), total unpaid balance (MCM 338); purchase price percentage (MCM 338) and Purchase price (MCM 338)" (Memo in Support pg. 6). Midland did redact Proprietary and Trade Secret information from the Receivable Purchase Agreement. However, Midland did not redact the "identity of the entity selling the accounts," but rather, it redacted Pricing Information for the Receivables purchased as a whole. Plaintiff further argues that Midland violated the Court Order by redacting this document, however, the Court did not rule that Midland was ordered to divulge Proprietary and Trade Secret information that may have been contained in the Receivable Purchase Agreement. The pricing information is proprietary and a trade secret. This pricing information is completely irrelevant to whether Midland violated the FDCPA and FCRA, and any damages. Plaintiff wants this information to bias the jury and pressure Midland, not to prove any required element in the case.

Plaintiff argues Midland "claimed that the information could not be obtained in less than 14 days, but it miraculously appeared in the package of information" served on June 16 and received by Plaintiff of June 17 by Plaintiff.  The documents that were produced on June 16 and printed prior to the June 11 hearing had nothing to do with soft pull data Plaintiff is seeking.  Plaintiff is trying to poison the well and mismatch the issues before the Court.  Midland did not say that the information could not be obtained in less than fourteen days.  Midland merely asked for fourteen days to produce the information before it did not know how long would take to gather such information, and Midland was trying to be conservative in its estimation.

Plaintiff further argues Midland did not produce data exchanged with Experian.  Plaintiff is wrong.  Midland produced the data sent to credit reporting bureaus, the skip trace collection data received was also identified as part of same document that shows data received from Insight Acxiom as part of skip tracing.  As to Plaintiff's Interrogatories 7 and 9, Rule 33(d) is appropriate because it is just as easy for Plaintiff to read the documents, and Midland has told Plaintiff the dates of the soft pulls.

Plaintiff's counsel knows this documentation has been produced, but claims he does not understand and demands an explanation.  That is the purpose of a deposition.  Plaintiff cannot continue re-writing his discovery requests.

F.   **Plaintiff's arguments on Midland's Interrogatories are meritless.**

   1.   **Interrogatory No. 5.**

Plaintiff argues Midland did not provide information regarding written and oral communications with Plaintiff.  Plaintiff is wrong.  Midland identified all written and oral communications with Plaintiff in its responses to Interrogatory No. 1, which states who had calls with Plaintiff.  Midland further identified each person who did each thing in response to

Interrogatory No. 3, which is incorporated into the response of Interrogatory No. 1, which is incorporated into Interrogatory No. 15.

### 2. **Interrogatory No. 13.**

Plaintiff argues that the information provided is non-responsive. During the June 11 hearing, the Court granted Plaintiff's Motion to Compel by ordering Midland to produce information concerning the process for requesting information from Insight Acxiom (i.e. what information provided to IA, what information obtained from IA, why there was a request to obtain new address / phone information about Teresa Pennington from IA). However, at time the Court ordered this, the Court did not have before it Midland's first or second supplemental discovery responses. Midland's first supplemental responses (served night before the June 11 hearing) and the second supplemental responses (served June 16) provided the information asked for in response to Interrogatory No. 13. As shown below, Plaintiff is trying to expand the reach of her interrogatory, as the Court indicated during the hearing she did in her motion to compel.

| Plaintiff's Interrogatory 13 | Plaintiff's Demands in Phone Calls and Briefs |
|---|---|
| Please state all facts regarding how *you* obtained *Plaintiff's* address of 13728 Denham Way, Bristow, VA. A full response hereto will include the date *you* acquired or learned of the address, and all facts related to how *you* acquired or learned of the address. | "All the Plaintiff seeks to discover is what facts lead MCM to believe that she was the Teresa Pennington that defaulted on the Dell debt. The TUBASE and TUCOMBO documents demonstrate that Teresa L. Pennington is a common name and there were many different ones to choose from, yet we still cannot discover what information lead it to believe that Trooper Pennington was the responsible one." (Plaintiff's Memorandum in Support, page 9) |

Again, Plaintiff is seeking to convene a deposition disguised as an interrogatory. Midland stated how it obtained the address. Nothing more was asked in this interrogatory.

3.     **Interrogatory No. 16.**

Plaintiff argues Midland cannot use Rule 33(d).  Plaintiff is wrong.  Midland has provided the substance of communications with Credit Reporting Agencies ("CRAs"), any subsequent actions taken as a result of communication with CRAs.  This was done electronically and in coordination with the employees previously identified.  Plaintiff's counsel admits he does not understand the documents.  He can educate himself and further investigate his client's case during Midland's deposition and the deposition of TransUnion LLC, which is noticed for July 9 (unless counsel agree to another date).  Again, Plaintiff's counsel cannot re-write the interrogatory demanding instructions on how to interpret the data provided.

4.     **Interrogatory No. 19.**

Midland has provided its policies and procedures and training materials on the Fair Debt Collection Practices Action and Fair Credit Reporting Act.  Further Midland stated that its Account Managers and Collection Employees are trained using the documents identified above and produced.  The documents detail the training for new hires, discusses specific federal laws, and instructions on responding to various situations and customer questions.  If Plaintiff has specific questions on training and the content of these procedures, she can inquire further at the deposition.  If Midland was ordered to disclose more information, and misunderstood the Court's previous order, it will promptly supplement.

G.     **Plaintiff complains about the "production" of witnesses for depositions and objects to preparing the 30(b)(6) corporate representative for "many" of the topics identified.**

Midland has filed a Motion for Protective Order regarding its Objections to Plaintiff's Deposition Topics (*see* Docket No. 22).  The parties conferred and Midland agreed to reserve objections and withdrew some of its objections, however, Plaintiff would not agree that any topics are beyond what is appropriate for inquiry during a 30(b)(6) deposition.

Despite the Court denying Plaintiff's Motion to Compel as to the Rule 26(a)(1) Disclosures, and explaining to Plaintiff at the hearing that Plaintiff's counsel misunderstands Rule 26(a)(1) because it only requires a party to identify people upon which a party will rely to support its defenses, Plaintiff complains it should be provided this information.

Plaintiff complains she is being prevented from taking depositions or addressing relevant topics, but fails to say how or why. Midland will provide multiple corporate representatives to testify on the forty-one (41) topics identified by Plaintiff. Midland offered four (4) days for these depositions prior to the discovery cut-off of July 9. Then, Plaintiff's counsel stated he was on vacation and his partner could not conduct the depositions. Midland has not offered July 15, 16, 19 and 20 for the depositions. Below is the record on this issue.

On or about May 11, 2010, Midland began requesting that Plaintiff provide available dates for depositions in order to block off dates for depositions of Plaintiff, third party fact witnesses, and Midland's corporate representatives and employees.

Plaintiff served her Rule 30(b)(6) Notice of Deposition via email at 5:13 p.m. on June 14, 2010, which listed forty-one (41) topics and noticed the deposition for June 21, 2010. Plaintiff also indicated availability to conduct this Rule 30(b)(6) deposition on June 24, 25, 28, and July 1, 2010. This was the first communication from Plaintiff regarding the date(s) on which it desires to depose Midland.

Upon receipt on June 14, 2010, of Plaintiff's Rule 30(b)(6) Notice of Deposition, Midland diligently began the process of identifying and scheduling its corporate representatives to testify on the numerous topics identified by Plaintiff. Midland also began the process of coordinating the schedules of its corporate representatives, its in-house counsel, its outside counsel, and Plaintiff's counsel.

On June 17, 2010, Midland offered July 7, 8, and 9, 2010 as dates for Plaintiff to conduct its Rule 30(b)(6) deposition and to depose the employees of Midland.

Subsequently, on June 18, 2010, counsel for Plaintiff informed counsel for Midland that the former is scheduled to be on vacation during the week that encompasses July 7, 8 and 9. Counsel for Plaintiff never mentioned his vacation the week of July 5 <u>until after</u> Midland proposed those three (3) dates. Counsel for Plaintiff further represented that his vacation was not planned until after this Court issued its Scheduling Order, which established July 9, 2010 as the current discovery cut-off date. As a result of Plaintiff's counsel's vacation, on June 18, 2010, Midland offered July 15, 16, 19 and 20 as potential deposition dates if the Court extended discovery.

WHEREFORE, Defendant Midland Credit Management, Inc., respectfully requests this Court deny Plaintiff's Motion for Sanctions and grant Defendant such other and further relief as this Court deems just and proper.

                                                **MIDLAND CREDIT MANAGEMENT, INC.**

                                          By:         /s/ John C. Lynch
                                                    Of Counsel

John C. Lynch (VSB # 39267)
Ethan G. Ostroff (VSB #71610)
*Counsel for Defendant Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com
E-mail: ethan.ostroff@troutmansanders.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

TERESA L. PENNINGTON,

    Plaintiff,

v.                                              Civil Action No. 1:10cv112

MIDLAND CREDIT MANAGEMENT, INC.,

    Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following CM/ECF participants:

**Counsel for Plaintiff Teresa L. Pennington**
A. Hugo Blankenship, III
Thomas B. Christiano
Blankenship & Christiano, P.C.
1984 Isaac Newton Square, Suite 304
Reston, Virginia 20190
E-mail: hugo@blankingship.com
E-mail: tom@blankingship.com

                                    /s/ John C. Lynch
                              John C. Lynch (VSB # 39267)
                              *Counsel for Defendant*
                              *Midland Credit Management, Inc.*
                              TROUTMAN SANDERS LLP
                              222 Central Park Avenue, Suite 2000
                              Virginia Beach, VA 23462
                              Telephone: (757) 687-7765
                              Facsimile: (757) 687-1504
                              E-mail: john.lynch@troutmansanders.com

402695v1